**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Afeez O.,

Petitioner,

v.

ICE ERO St. Paul Field Director, U.S. Immigration and Customs Enforcement, and Department of Homeland Security,

Respondents.

Case No. 26-cv-1925 (JRT/LIB)

**REPORT AND RECOMMENDATION**

---

This matter is before the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636 and on Petitioner Afeez O.'s Petition for Writ of Habeas Corpus (Petition [Docket No. 1]). For the following reasons, the Court recommends denying the Petition and dismissing this action.

## I.    Background

Petitioner is a noncitizen detained by the federal government at the Sherburne County Jail in Elk River, Minnesota. (See Pet. [Docket No. 1] at 2). He has been in the custody of U.S. Immigration and Customs Enforcement ("ICE") since about February 4, 2026. (See, e.g., Exhibit A [Docket No. 1-2] at 3). The Petition names three Respondents: (1) the ICE Enforcement and Removal Operations ("ERO") St. Paul Field Office Director; (2) ICE; and (3) the Department of Homeland Security ("DHS"). (Pet. [Docket No. 1] at 1).[1]

Petitioner alleges that in September 2020, he retained the Khanh Nguyen Law Office (specifically, attorney Christelle Mouhanna) to represent him in a marriage-based immigration petition. (See Exhibit A [Docket No. 1-2] at 4, 8). This representation involved a "one-step"

---

[1] In habeas practice, the respondent is typically the petitioner's immediate custodian. See, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004). The Court takes judicial notice that Joel Brott is the current Sherburne County Sheriff and that the Sherburne County Sheriff's Office operates the Sherburne County Jail.

adjustment-of-status application requiring the filing of a Form I-130, "Petition for Alien Relative," and a Form I-485, "Application to Register Permanent Residence or Adjust Status." (See, e.g., Id. at 4). On January 14, 2021, the Form I-130 was filed with U.S. Citizenship and Immigration Services ("USCIS"). (See Id.).

After an initial USCIS interview, immigration officers conducted a site visit at Petitioner's residence in Marshall, Minnesota, apparently in May 2022. (See Id.). Petitioner alleges that he immediately contacted Mouhanna to report the visit. Mouhanna allegedly told him that she "had never handled a case like his before and did not know what to do," advising Petitioner to "wait to hear something back from immigration." (Id.). Petitioner asserts that after this May 2022 conversation, "communication about the immigration case effectively stopped"; later communications from the law firm were with "one assistant" and concerned billing. (Id. at 4–5).

While the immigration petition was pending, Petitioner became involved in Minnesota state criminal proceedings. In February 2024, he was incarcerated based on a conviction for second-degree assault with a dangerous weapon. (See, e.g., Exhibit A [Docket No. 1-2] at 3–4; cf. Minn. Stat. § 609.222, subd. (1) (statute of conviction)). Petitioner claims his relevant conduct involved brandishing a weapon and states that the weapon was not fired. (See Exhibit [Docket No. 1-2] at 4).

During Petitioner's jail term, USCIS moved forward on his immigration matter. On February 23, 2024, USCIS issued a Request for Evidence ("RFE") on the Form I-130 petition, stating that the documentation was insufficient and giving Petitioner 87 days to respond. (See Id. at 5; Exhibit B [Docket No. 1-3] at 1). Petitioner claims his counsel received this request but failed to notify him of it, the required evidence, or the deadline. (See, e.g., Pet. [Docket No. 1] at 2). Petitioner thus did not respond, and on November 17, 2025, USCIS denied the Form I-130 petition as abandoned under 8 C.F.R. § 103.2(b)(13)(i). (See Exhibit B [Docket No. 1-3] at 1–2). Petitioner asserts he was unaware of the RFE and the denial until October 2025, when a new immigration attorney reviewed the case.

2

(See, e.g., Exhibit A [Docket No. 1-2] at 5). By then, the 87-day response period had lapsed by over 500 days. (See Id.).

After finishing his state criminal sentence, authorities transferred Petitioner to federal immigration custody on February 4, 2026. (See Id. at 5). He states that because of his second-degree-assault conviction, DHS began expedited administrative removal proceedings under 8 U.S.C. § 1228(b) (i.e., § 238(b) of the Immigration and Nationality Act ("INA")). (See, e.g., Id. at 3). Broadly, this framework allows summary removal of noncitizens who are not lawful permanent residents and have been convicted of an "aggravated felony." See, e.g., 8 U.S.C. § 1228(b)(1) (authorizing administrative removal of noncitizens not admitted as lawful permanent residents who are deportable under 8 U.S.C. § 1227(a)(2)(A)(iii)); Id. § 1101(a)(43) (defining "aggravated felony" for INA purposes). DHS issued a "Notice of Intent to Issue a Final Administrative Removal Order," which Petitioner signed in order to "contest the charge and/or request withholding of removal." (See Exhibit A [Docket No. 1-2] at 3–4).

To stop his removal, Petitioner began collateral administrative and professional actions. On March 7, 2026, he filed a formal bar complaint against Mouhanna with the Minnesota Office of Lawyers Professional Responsibility, detailing her alleged failure to inform him of the RFE. (See, e.g., Exhibit E [Docket No. 1-6]). On the same date, he submitted to DHS a "Motion to Reopen and Rescind Administrative Removal Order." (See Exhibit A [Docket No. 1-2]). This motion argues (among other things) that Petitioner suffered ineffective assistance of counsel during his prior immigration proceedings.

Petitioner initiated these proceedings on March 18, 2026, seeking habeas relief. (Pet. [Docket No. 1]). On March 30, 2026, the Court received a supplement from Petitioner stating that he has "a pending [I-130] petition" that is "currently under review pending approval," and that he has a "valid

3

Employment Authorization Document" that is effective through 2028. (Supplement [Docket No. 2] at 1).

The Court reads the Petition as asserting three separate causes of action. First, the Petition asks this Court to "[i]ssue a writ of habeas corpus reviewing the legality of Petitioner's detention and removal proceedings" and states that "Petitioner has raised substantial legal challenges to the validity of the removal order." (Pet. [Docket No. 1] at 2). Liberally construed in Petitioner's favor, this suggests a challenge under 28 U.S.C. § 2241 to the validity of a final removal order issued under 8 U.S.C. § 1228(b).[2] Second, Petitioner raises a Fifth Amendment due-process challenge to his immigration proceedings, arguing that his retained attorney's ineffective assistance deprived him of a meaningful opportunity to respond to the RFE and led to the abandonment of his original I-130 petition. (See Pet. [Docket No. 1] at 1–2). Third, Petitioner's request that the Court "[o]rder that Petitioner be released from detention under reasonable conditions of supervision while his Motion to Reopen remains pending, including release on bond" (Id. at 2), could be liberally construed as challenging the legality of his ongoing immigration detention under 28 U.S.C. § 2241.[3]

For relief, Petitioner asks this Court to (1) "[a]ccept jurisdiction" over the Petition; (2) "[i]ssue a writ of habeas corpus reviewing the legality of Petitioner's detention and removal proceedings"; and (3) order Petitioner's release from detention on bond. (Id. at 2).

---

[2] The Petition does not specify the legal theory underlying this challenge. The Court notes, however, that the attached Motion to Reopen—addressed to DHS, not this Court—argues that Petitioner's assault conviction does not qualify as a "crime of violence" sufficient to be an "aggravated felony" under 8 U.S.C. § 1101(a)(43). (Exhibit A [Docket No. 1-2] at 7–8). Because that argument is directed at DHS, the Court does not treat it as a separately pleaded cause of action in this proceeding.

[3] Petitioner does not expressly frame this as a standalone constitutional challenge to his confinement or the lack of a bond hearing; his due-process argument instead targets the removal order and underlying proceedings. But because a pro se petitioner's request for release in a § 2241 petition necessarily questions the lawfulness of custody, the Court construes the Petition as raising a detention claim separate from the removal-order challenges.

## II.      Analysis

### A.      Jurisdiction Over Claims 1 and 2

Under 8 U.S.C. § 1252(a)(5), a petition for review filed with the appropriate court of appeals is "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."  To eliminate ambiguity, Congress explicitly included in § 1252(a)(5) a "notwithstanding" clause stating that this exclusivity applies "[n]otwithstanding any other provision of law (statutory or nonstatutory), including [28 U.S.C. § 2241], or any other habeas corpus provision." Furthermore, under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." And under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The Eighth Circuit has held that these provisions divest district courts of habeas jurisdiction over challenges to removal orders. See, e.g., Silva v. United States, 866 F.3d 938, 940 (8th Cir. 2017); Toledo-Ortega v. Immigr. & Customs Enf't, No. 20-cv-952 (SRN/KMM), 2020 WL 2765110, at *3–4 (D. Minn. May 28, 2020) (citing cases).

Petitioner's first claim, based on a request that the Court review "the legality of Petitioner's detention and removal proceedings" (Pet. [Docket No. 1] at 2), is, to the extent it seeks review of the Petitioner's removal order, a challenge to a final order of removal that § 1252(a)(5) places exclusively with courts of appeals. To the extent that Petitioner argues that his assault conviction does not qualify as an "aggravated felony," that challenge also falls within the jurisdiction-channeling framework. Indeed, 8 U.S.C. § 1252(a)(2)(D) specifically allows "constitutional claims and questions of law" to

be raised in a "petition for review filed with an appropriate court of appeals." Petitioner may not pursue that claim here.

Similarly, while Petitioner frames the Petition's second claim (i.e., the ineffective-assistance-of-counsel challenge) as a constitutional due-process violation, it ultimately seeks to invalidate the administrative mechanisms and factual predicates leading to Petitioner's removal order. In other words, the argument that Petitioner's counsel's failure to respond to the RFE caused the abandonment of the I-130 petition and undermined the proceedings leading to Petitioner's removal order is effectively a challenge to the procedural integrity of that order. Because this claim presents a question of law or fact "arising from any action taken or proceeding brought to remove an alien," it falls under 8 U.S.C. § 1252(b)(9)'s channeling requirement.

This Court therefore lacks subject-matter jurisdiction to adjudicate Petitioner's first and second claims.  The Court therefore recommends denying those claims without prejudice.

### B.      Claim 3's Merits

Having determined that only the Petition's third claim should proceed, the Court addresses it on the merits. The statutory framework governing detention of noncitizens depends on a noncitizen's specific posture in the removal process. Congress has created distinct detention phases, each with different statutory mandates and constitutional due-process implications.

During active removal proceedings, detention is generally governed by 8 U.S.C. § 1226. Section 1226(a) gives the Attorney General discretionary authority to detain a noncitizen and permits release on bond. By contrast, 8 U.S.C. § 1226(c)(1)(B) requires the Attorney General to "take into custody" any noncitizen who is "deportable by reason of having committed" specific enumerated offenses, including aggravated felonies. Cf. 8 U.S.C. § 1101(a)(43)(F). For those detained under § 1226(c), detention without a bond hearing is mandatory while removal proceedings proceed. See,

6

e.g., <u>Demore v. Kim</u>, 538 U.S. 510, 530–31 (2003); <u>Banyee v. Garland</u>, 115 F.4th 928, 931 (8th Cir. 2024) (quoting <u>Demore</u>).

After a final order of removal issues, a different statutory regime applies. The noncitizen then enters the "removal period," governed by 8 U.S.C. § 1231(a). Section 1231(a)(1)–(2) establish a 90-day removal period during which detention is mandatory—and § 1231(a)(2) further provides that "[u]nder no circumstance" during this period shall the Attorney General release a noncitizen who is deportable on criminal grounds under 8 U.S.C. § 1227(a)(2). That provision encompasses, as relevant here, noncitizens deportable by reason of an aggravated-felony conviction. <u>See</u> 8 U.S.C. § 1227(a)(2)(A)(iii).

After the removal period, § 1231(a)(6) permits further detention, and the Supreme Court has held this provision does not itself require bond hearings. <u>See</u> <u>Johnson v. Arteaga-Martinez</u>, 596 U.S. 573, 580–81 (2022). To prevent indefinite detention from violating the Due Process Clause, however, the Supreme Court has read an implicit limitation into § 1231(a)(6) establishing a six-month presumptively reasonable detention period after an order of removal. <u>See</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 701–02 (2001); <u>Bah v. Cangemi</u>, 548 F.3d 680, 683 (8th Cir. 2008) (citing <u>Zadvydas</u>). To state a plausible claim for release under <u>Zadvydas</u>, however, a petitioner must show detention beyond six months and provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Id.</u>

Under this framework, Petitioner's detention claim does not state a plausible basis for habeas relief. The Petition reports that DHS issued an order of removal triggering the transition of Petitioner's custody to the § 1231(a) framework. Petitioner states he was transferred from state prison to ICE custody on February 4, 2026. The mandatory 90-day removal period under § 1231(a)(2) thus began around that date. When Petitioner filed the Petition on or about March 18, 2026, he had been in ICE detention for only about six weeks. At the time of this Report and Recommendation, detention

7

remains well within the mandatory 90-day removal window. Congress has removed any discretion to release a noncitizen on bond during this period. Petitioner has therefore not pleaded the temporal elements of a <u>Zadvydas</u> claim (i.e., detention exceeding six months with no significant likelihood of removal); indeed, on the current record he cannot meet them.

The Court therefore recommends denying Claim 3. Because this dismissal rests on prematurity, the Court recommends denying the claim without prejudice. In summary, then, the Court recommends denying the Petition in its entirety.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Petitioner Afeez O.'s Petition for Writ of Habeas Corpus, (Petition [Docket No. 1]), be **DENIED without prejudice**.

Dated: April 20, 2026            <u>s/Leo I. Brisbois</u>
                                          Hon. Leo I. Brisbois
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. <u>See</u> Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).